UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL MURPHY AND                                                                    PLAINTIFFS
JULIA MURPHY

V.                                                               CIVIL ACTION NO. 3:21-CV-825-DPJ-FKB

ALLSTATE VEHICLE & PROPERTY                                                           DEFENDANTS
INSURANCE CO. AND JOHN DOES 1–5

ORDER

Plaintiffs Michael and Julia Murphy bring an insurance-coverage claim against their property insurer, Defendant Allstate Vehicle & Property Insurance Co., related to weather damage to a storage structure on their property.  The Murphys' Complaint includes claims premised on breach-of-contract and various tort theories; they seek contractual, extra-contractual, and punitive damages.  Allstate has moved for judgment on the pleadings as to all claims except those for alleged breach of contract.  Although the Court will grant Allstate's motion, the Murphys may seek leave to amend their Complaint.

I.      Factual Background

When the Murphys first sought property insurance, Allstate sent an "employee/agent" to perform an "underwriting inspection" of their property, including a structure they used for storage.  Compl. [1] ¶ 8.  The agent allegedly told the Murphys "that the Policy provided coverage for the storage structure." *Id.*  When Allstate later issued the Policy in November 2017, it included "Other Structures" coverage for which the Murphys paid higher premiums.  *Id.*

In February 2021, an accumulation of ice and snow collapsed the disputed storage structure.  *Id.* ¶ 10.  But when the Murphys made a claim, Allstate denied it.  Denial Letter [1-1] at 1.  According to Allstate, the Policy covered the structure for some risks, but collapses were

covered only if the structure satisfied the Policy's definition of a "building structure." Because it did not, Allstate denied the claim. *Id.*

Aggrieved, the Murphys sued Allstate for: policy benefits (Count I); bad-faith denial, delay, and investigation (Count II); negligence and gross negligence (Count III); breach of contract (Count IV); tortious breach of contract (Count V); breach of the covenant of good faith and fair dealing (Count VI); and negligent and intentional infliction of emotional distress (Count VII). Allstate then sought judgment on all but the breach-of-contract claims asserted in Counts I and VI. The Court has both personal and subject-matter jurisdiction over the dispute, and the motion is now fully briefed.

II.   Standard

Allstate moved to dismiss or, in the alternative, for judgment on the pleadings. Because Allstate had already filed its Answer [4], the Court construes its motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), though "the standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)).

To avoid dismissal under either rule, a plaintiff must have pleaded "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 439 (quoting *Iqbal*, 556 U.S. at 678).

For this inquiry, "court[s] accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369

F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).  Thus, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Ultimately, the standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements."  *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Finally, the scope of the inquiry under Rule 12(c) is restricted to the pleadings (that is, the complaint; the answer; and, if ordered, a reply to the answer).  *Bosarge*, 796 F.3d at 440 (citing *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)).  That said, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim."  *Id.* (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).  Here, Allstate has attached a certified copy of the Policy, and the Murphys do not dispute that the Court may consider it.

III.   Analysis

The Murphys seek contract damages for their Policy benefits plus extra-contractual and punitive damages.  Allstate limits its motion to the latter categories of damages as asserted in the following counts:  Count II (bad faith), Count III (negligence and gross negligence), Count V

3

(tortious breach of contract), Count VI (breach of covenant of good faith and fair dealing); Count VII (negligent and intentional infliction of emotional distress).

Before a jury may award extra-contractual or punitive damages related to a breach of contract, it must find an independent tort. *See Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992) (addressing extra-contractual damages); *Willard v. Paracelsus Health Care Corp.*, 681 So. 2d 539, 543 (Miss. 1996) (addressing punitive damages). Thus, to obtain such damages, Mississippi law requires more than a mere breach of contract.

For extra-contractual damages (not including punitive damages), the Murphys must show that Allstate lacked "an arguable, good-faith basis for denial of [their] claim." *United Servs. Auto Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) (quoting *United Amer. Ins. Co. v. Merill*, 978 So. 2d 613, 627 (Miss. 2007)). To recover punitive damages, they must show that Allstate lacked "an arguable or legitimate basis, either in fact or law" and acted "with malice or gross negligence in disregard of the insured's rights." *Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 643 (Miss. 2013) (citation omitted).

The Murphys' pleaded causes of action likewise require more than mere breach. For example, to establish claims for bad faith or breach of the implied covenant of good faith and fair dealing, plaintiffs must prove "more than bad judgment or negligence"; rather, "'bad faith' implies some *conscious* wrongdoing 'because of a dishonest purpose or moral obliquity.'" *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (Miss. 2004) (citation omitted). Similarly, an intentional-infliction-of-emotional-distress claim requires showing, among other elements, "wilfull[] or wanton[] [actions] toward the plaintiff" that were "directed at, or intended to cause harm to, the plaintiff." *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct.

App. 2017). The question is whether the Murphys pleaded "facts" that could yield a "reasonable inference" that Allstate breached these standards. *Bosarge*, 796 F.3d at 439.

*Iqbal* suggests that courts facing such questions begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. While that step seems simple, the parties dispute what constitutes mere legal conclusions, especially as to pleadings regarding Allstate's intent. As just one example, the Murphys allege the following:

> By unreasonably delaying and refusing to provide benefits of coverage in payment of Plaintiffs' valid claims, Allstate acted fraudulently, oppressively, maliciously, and outrageously toward Plaintiffs, with conscious disregard for [their] rights under the law and under the Policy, and did so with intentions of benefitting Allstate financially, harassing Plaintiffs, discouraging Plaintiffs from asserting valid claims, avoiding payment of the valid claims, and causing or willfully disregarding the potential of severe emotional distress to Plaintiffs.
>
> The course of conduct of Allstate as described above, was deliberately undertaken; was wanton, willful, and in reckless disregard of the rights and well-being of Plaintiffs, and was attended by malice and vindictiveness on the part of Allstate . . . .

Compl. [1] ¶¶ 30–31.

Allstate says that such allegations are conclusory and should be disregarded. Def.'s Supp. Mem. [6] at 9. In response, Plaintiffs point to Federal Rule of Civil Procedure 9(b). Pls.' Opp'n Mem. [9] at 3. That rule states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The Murphys focus on the rule's second sentence, suggesting that it requires merely general pleading—without supporting facts—when alleging issues like malice. But the Supreme Court rejected that position in *Iqbal*, explaining that Rule 9(b)'s second sentence simply excludes conditions of the mind from Rule 9(b)'s heightened particularity requirement for claims of fraud

or mistake. *Iqbal*, 556 U.S. at 686. Thus, the second sentence "does not give [plaintiffs] license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* And "Rule 8 does not empower [plaintiffs] to plead the bare elements of [a] cause of action, affix the label 'general allegation,' and expect [the] complaint to survive a motion to dismiss." *Id.* Based on that construction, the *Iqbal* Court found that the plaintiff had offered nothing more than conclusions when he alleged that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement." 556 U.S. at 680.

In sum, "legal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id*. at 679; *see also Hibbets v. Lexington Ins. Co.*, 377 F. App'x 353, 355–56 (5th Cir. 2010) ("Simply stating a conclusory allegation that [the insurer] . . . breached a duty, without providing factual allegations in support is insufficient to state a claim.").

Much of the Murphys' Complaint reflects legal conclusions for which they offer no supporting facts. Once such statements are excluded, there are few remaining facts, all of which the Murphys neatly summarized in their memorandum:

> 1) Allstate performed an underwriting inspection of the Murphys' home and the storage barn at issue and informed the Murphys that the policy provided coverage for the storage barn;
>
> 2) Due to the value of the storage barn, Allstate increased the "other structures" coverage on the policy and charged the Murphys a higher premium, and Allstate accepted these premiums;
>
> 3) [O]n or about February 15, 2021, a catastrophic ice and [sic] storm destroyed the storage barn[;] and
>
> 4) [D]espite representing to the Murphys they would need to increase their "other structures" coverage and accepting the Murphys increased premiums since 2017, Allstate completely denied the Murphys' claim by . . . claiming the storage barn did not satisfy Allstate's definition of a "building structure."

6

Pls.' Mem. [9] at 1–2 (omitting conclusion that Allstate acted "wrongfully"). Collectively, these facts fail to plausibly suggest that Allstate committed an independent tort that would allow extra-contractual or punitive damages.

For starters, even if the purported agent's pre-policy statements conflicted with the Policy, the Murphys have not pleaded facts suggesting that those representations could alter the policy language. "Under Mississippi law, a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007) (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 464 (5th Cir. 2003)).

In addition, nothing in the Complaint suggests that Allstate's agent/employee promised that the structure would be covered for all risks—much less collapse. The Complaint simply states that the agent said that "the Policy provided coverage for the storage structure." Compl. [1] ¶ 8. That might be true—the Policy provided coverage for some risks but not others based on the type of structure involved in the loss. The relevant policy provisions state:

> **Section I – Your Property**
> **Losses We Cover Under Coverages A and B:**
>
> **We** will cover sudden and accidental direct physical loss to property described in **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** except as limited or excluded in this policy.

*See* Policy [5-1] at 33. This provision provided coverage for "other structures," which may have included the disputed structure. But, like most insurance policies, the Policy had exclusions:

> **Losses We Do Not Cover Under Coverages A and B:**
>
> D.   Under **Dwelling Protection–Coverage A** and **Other Structures Protection– Coverage B** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition

> involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
>
> . . .
>
> 4. Collapse, except as specifically provided in **Section I Additional Protection** under item 10, "Collapse."

*Id.* at 35. So, "other structures" were covered for certain risks, but not collapse, and there are no pleaded facts suggesting that an Allstate agent misrepresented the extent of coverage.

That leads to an even greater factual gap—whether Allstate had an arguable basis for denying coverage. While "other structures" were not covered for collapse, the Policy did cover collapse for certain structures:

> **Section I Additional Protection**
>
> **10.    Collapse**
>
> **We** will cover at the **residence premises**:
>
> a) the entire collapse of a covered **building structure**;
>
> b) the entire collapse of part of a covered **building structure**; and
>
> c) direct physical loss to covered property caused by a) or b) above.

*Id.* at 41, 43. The Policy defined "building structure" to mean "a structure with walls and a roof." *Id.* at 29.

Allstate concluded that no coverage existed for the collapse because the disputed property was not, in its opinion, a "building structure." And, significantly, there are no facts in the Complaint from which the Court could determine whether the Murphys' structure could plausibly be viewed as a "building structure." For example, there are no averments regarding its walls or roof.

8

Because there are no facts suggesting that the Murphys' structure was a building structure, it is impossible to consider whether Allstate (1) lacked an arguable basis for its decision; (2) drafted an ambiguous policy; (3) charged the Murphys for coverage they never received; (4) acted with malice or even simple negligence (assuming negligence could be actionable in this context)[1]; (5) engaged in post-claim underwriting; (6) delayed payment; or (7) breached its duty to investigate.

The Murphys attempted to fill that factual gap in their memorandum by describing the structure (though its design remains somewhat unclear).  *See* Pls.' Mem. [9] at 13 (describing what sounds like a lean-to).  Regardless, the Court may not consider those arguments under Rule 12(c) because review is limited to the pleaded facts.  *See Bosarge*, 796 F.3d at 440.

The Murphys also place considerable emphasis on two non-binding cases that they say "control" the present motion:  *Triumph Church of God in Christ v. Church Mutual Insurance Co.*, No. 5:21-CV-6-KS-JCG, 2021 WL 1519510, at *1 (S.D. Miss. Apr. 16, 2021) and *Estate of Minor v. USAA*, 247 So. 3d 1266, 1267 (Miss. Ct. App. 2017).  Pls.' Mem. [9] at 6.  But those cases demonstrate the lack of facts in this record.

In *Triumph Church*, the district court held that the church adequately pleaded a bad-faith claim because the complaint factually alleged that the defendant insurance company ignored the plaintiff's independent engineer's report, conducted no investigation after receiving that report, and relied "on the portions of its adjuster's, consultant's, and vendors' reports which supported the results-oriented investigation." 2021 WL 1519510, at *2.  These well-pleaded facts stand in

---

[1] "[B]reach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021) (citation omitted).

sharp contrast to the Murphys' conclusory assertion that Allstate failed to investigate or honor the claim.

The Murphys next argue that their "claims virtually mirror the *Minor* claims." Pls.' Mem. [9] at 7. While their causes of action may be similar, the factual support differs. In *Minor*, the Mississippi Court of Appeals considered an appeal from an order dismissing punitive-damages claims based on an insurer's alleged bad faith. 247 So. 3d at 1271. Although the trial court granted summary judgment because USAA had a legitimate or arguable basis for its decision, the trial court also noted that "[t]he Minors did show credible material proof that USAA did not have a reasonable or arguable reason to make its claims decisions." *Id.* The appellate court concluded that these contradictory holdings demonstrated a question of fact. *Id.* The court then examined facts that would support a finding that USAA lacked an arguable basis for its decision. *Id.* at 1272–73.

The Murphys focus on just one of those facts and take it out of context. As they accurately quote, the *Minor* opinion states: "USAA's failure to consider the information that the Minors had provided to USAA in the pre-Katrina underwriting was a genuine issue of material fact in dispute." Pls.' Mem. [9] at 7 (quoting *Minor*, 247 So. 3d at 1272). The Murphys contend that Allstate likewise had pre-claim information from the underwriting inspection that would have informed Allstate that the storage structure was covered for this risk. But their quote from *Minor* skips the next sentence, in which the court explained the significance of the pre-claim underwriting—USAA asserted that it delayed processing the claim because the insured failed to provide information USAA may have already possessed. *See Minor*, 247 So. 3d at 1272. That is not what happened here.

In short, the Murphys have not pleaded facts like those considered in *Triumph Church* and *Minor*. And there are no other facts pleaded in the Complaint that would reasonably suggest plausible claims on the disputed counts.

IV.  Conclusion

The Court has considered all arguments[2]; those not discussed would not change this result. Allstate's Motion to Dismiss [5] is granted. The Court notes, however, that, considering the consequences of dismissal

> and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As such, the Murphys are given 14 days from the date of this order to file a properly supported motion seeking leave to amend.

**SO ORDERED AND ADJUDGED** this the 7th day of July, 2022.

> s/ *Daniel P. Jordan III*
> CHIEF UNITED STATES DISTRICT JUDGE

---

[2] "[B]reach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021) (quoting *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015)). "There must be a duty of care 'fixed by law and independent of the contract.'" *Clausell*, 158 So. 3d at 391 (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 624 (Miss. 1964)). For the above-stated reasons, the Murphys have not shown such an independent breach. And "[b]ecause the amended complaint fails to state a negligence claim upon which relief can be granted, it necessarily fails to state a claim for negligent infliction of emotional distress." *Lawrence*, 326 So. 3d at 993 n.2.