UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL MURPHY AND                                                                   PLAINTIFFS
JULIA MURPHY

V.                                                              CIVIL ACTION NO. 3:21-CV-825-DPJ-FKB

ALLSTATE VEHICLE & PROPERTY                                                          DEFENDANTS
INSURANCE CO. AND JOHN DOES 1–5

ORDER

The parties dispute whether Defendant Allstate Vehicle & Property Insurance Co. agreed to insure a structure on Plaintiffs Michael and Julia Murphy's property against the risk of collapse. The case is before the Court on Plaintiffs' Motion for Leave to File an Amended Complaint [30] and Motion for Leave to File a Second Amended Complaint [45]. Both motions seek to salvage claims the Court previously dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the first motion is moot; Plaintiffs' second motion is granted as to the inclusion of the word "wind" in paragraphs 11 and 41, but it is denied in all other respects.

I.      Factual and Procedural Background

Plaintiffs Michael and Julia Murphy allege that, when they first sought property insurance, Allstate sent an employee to inspect their property, including a separate building structure consisting of "walls and a roof." Second Am. Compl. [45-2] ¶ 8. The agent allegedly represented to the Murphys "that the Policy provided full coverage for [the] structure, including coverage in the event of collapse." *Id.* When Allstate later issued the Policy in November 2017, it included "other structures" coverage for which the Murphys paid higher premiums. *Id.* ¶¶ 8–9.

The structure collapsed in February 2021 due to wind and an accumulation of ice and snow. *Id.* ¶¶ 10–11. But when the Murphys made a claim, Allstate denied it. *Id.* ¶ 16. According to Allstate, the structure was not insured against collapse because it was not a "building structure," *id.* ¶ 17, something the Policy defined as "a structure with walls and a roof," Policy [5-1] at 29. *See also* Denial Letter [1-1] at 1.

The Murphys sued Allstate for: policy benefits (Count One); bad-faith denial, delay, and investigation (Count Two); negligence and gross negligence (Count Three); breach of contract (Count Four); tortious breach of contract (Count Five); breach of the covenant of good faith and fair dealing (Count Six); and negligent and intentional infliction of emotional distress (Count Seven). The Court granted Allstate's motion to dismiss all but the breach-of-contract claims asserted in Counts One and Four but permitted the Murphys time to seek leave to amend their Complaint. Order [5].

The Murphys did so, but while that motion was pending, they moved for leave to file a second amended complaint. The only difference between the two is that the second motion includes the word "wind" in paragraphs 11 and 41. Def.'s Resp. [46] at 1; Pls.' Reply [49] at 1. Consequently, Allstate and the Murphys reincorporated the arguments outlined in their earlier briefs. The Court has both personal and subject-matter jurisdiction over the dispute, and the motions are now fully briefed.

II.   Standard

Federal Rule of Civil Procedure 15(a) governs motions to amend and states that "[t]he court should freely give leave [to amend] when justice so requires." That said, a district court may deny a motion to amend where amendment would be futile. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). Amendment would be futile if "the amended

complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. So, the Court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)" to the motion to amend. *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

Thus, to avoid dismissal, a plaintiff must have pleaded "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

For this inquiry, "court[s] accept 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Thus, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Ultimately, the standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

III.     Analysis

As a preliminary matter, Allstate does not oppose the Murphys' motion to add the word "wind" in paragraphs 11 and 41 of the second amended complaint. Def.'s Resp. [46] at 1. Consequently, the Murphys' motion [45] is granted to that extent. Nevertheless, Allstate says the Murphys' second amended complaint still fails to state a claim for those causes of action in which the Murphys seek extra-contractual and punitive damages: Count Two (bad faith), Count Three (negligence and gross negligence), Count Five (tortious breach of contract), Count Six (breach of covenant of good faith and fair dealing), and Count Seven (negligent and intentional infliction of emotional distress).

In its first order, this Court identified two principal deficiencies with the Murphys' initial complaint: (1) the Complaint failed to describe the structure, making it impossible to tell whether Allstate had a reasonable basis for denying the claim and (2) the Murphys could not reasonably rely on alleged pre-policy representations made by the agent if they contradicted policy language. Order [28] at 7–8. As noted then, recovery of extra-contractual damages in this case would require evidence that Allstate lacked "an arguable, good-faith basis for denial of [their] claim." *United Servs. Auto Ass'n v. Lisanby*, 47 So. 3d 1172, 1178 (Miss. 2010) (quoting *United Amer. Ins. Co. v. Merill*, 978 So. 2d 613, 627 (Miss. 2007)). Moreover, to recover punitive damages, the Murphys must show that Allstate acted "with malice or gross negligence in disregard of the insured's rights." *Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 643 (Miss. 2013) (citation omitted).

Similarly, the causes of action at issue here generally require Allstate's conduct to be more than mere breach, bad judgment, or negligence. *See Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (Miss. 2004). For example, claims for bad faith or breach of the implied

4

covenant of good faith and fair dealing require a showing of "some *conscious* wrongdoing 'because of a dishonest purpose or moral obliquity.'" *Id.* (emphasis added) (quoting *Bailey v. Bailey*, 724 So. 2d 335, 338 (Miss. 1998)). And an intentional-infliction-of-emotional-distress claim requires "wilfull[] or wanton[] [actions] toward the plaintiff" that were "directed at, or intended to cause harm to, the plaintiff." *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017). So, once again, the question is whether the Murphys pleaded facts that could yield a reasonable inference that Allstate breached those standards. *Bosarge*, 796 F.3d at 439.

A.     Whether the Structure Was a Building Structure Covered for Collapse

The Murphys argue that they have now pleaded sufficient facts to plausibly conclude that Allstate lacked an arguable basis to deny the claim. Whereas their initial complaint described the disputed property as a "storage structure" (without a physical description), Compl. [1] ¶ 8, their second amended complaint states that "[t]he *building structure* at issue contained both *walls and a roof*." Second Am. Compl. [45-2] ¶ 34 (emphasis added).

That averment tracks the critical Policy language. The Murphys purchased "other structures protection" that covered certain risks. But to be covered for collapse, the other structure had to be a "building structure":

**Section I Additional Protection**

**10. Collapse**

**We** will cover at the **residence premises**:

a) the entire collapse of a covered **building structure**;

b) the entire collapse of part of a covered **building structure**; and

c) direct physical loss to covered property caused by a) or b) above.

*Id.* at 41, 43.  The Policy defined "building structure" to mean "a structure with walls and a roof."  *Id.* at 29.

By tracking the policy language, the Murphys have pleaded the legal conclusion that they believe their structure was covered.  They have not, however, offered factual averments from which the Court could tell whether the structure factually meets that definition (for example averments describing what they claim to be walls or providing the number of walls that existed).  "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations."  *Iqbal*, 556 U.S. 669; *see also Hibbets v. Lexington Ins. Co.*, 377 F. App'x 353, 355–56 (5th Cir. 2010) ("Simply stating a conclusory allegation that [the insurer] . . . breached a duty, without providing factual allegations in support is insufficient to state a claim.").  Without that factual description, the Court remains unable to determine whether the Murphys have plausibly pleaded that Allstate lacked an arguable basis.

The Murphys also aver that Allstate's definition of building structure is ambiguous because, in part, it does not define "wall" or "roof."  Second Am. Compl. [45-2] ¶ 34.  The parties seem to agree that the structure had a roof, so the question is whether the failure to define "walls" renders the Policy ambiguous.  "A contract is ambiguous if it is 'susceptib[le] to two reasonable interpretations.'"  *Epperson v. SOUTHBank*, 93 So. 3d 10, 19 (Miss. 2012) (quoting *Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1232 (Miss. 2009)).  "The fact that a term is not defined in the policy itself does not alone make that term ambiguous."  *In re Chevis v. Miss. Farm Bureau Mut. Ins. Co.*, 76 So. 3d 187, 194 (Miss. Ct. App. 2011) (quoting *Katrina Canal Breaches Litig.*, 495 F.3d 191, 207 (5th Cir. 2007) (applying Louisiana law)).  Instead, when a term "is not defined anywhere in the contract[,] [c]ourts can use the plain and ordinary meaning

of the term." *Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 959 (Miss. 2013).

> Here, the Murphys point to two Merriam-Webster definitions of "wall":
>
> 1c:  a structure that serves to hold back pressure (as of water or sliding earth)
> 2:  one of the sides of a room or building connecting floor and ceiling or foundation and roof

*Wall*, Mirriam-Webster, https://www.merriam-webster.com/dictionary/wall (last visited Jan. 9, 2023). But absent any physical description of the structure, the Court cannot say whether it had "walls," i.e., more than one wall. As such, it cannot tell whether the structure is plausibly "susceptib[le] to two reasonable interpretations" of the word "walls," one of which would afford coverage. *Epperson*, 93 So. 3d at 19.

When the Court previously granted Allstate's motion to dismiss, it did not fault the Murphys for failing to say the magic words "walls and a roof." Instead, it stated that "there are no averments *regarding its walls or roof*." Order [28] at 8 (emphasis added). That's still true. By avoiding those facts, the Murphys have not plausibly pleaded that Allstate lacked an arguable basis for claiming that its Policy excludes collapse coverage because the structure lacked "walls." Denial Letter [1-1] at 1.[1]

---

[1] Though it is not apparent from the Rule 12(b)(6) record, the parties must know what this structure looked like before it collapsed. They have argued over whether it was a lean-to type design with a slanted roof and no other walls, but that description is not in the Complaint or the record. If it was a lean-to, then the Court doubts the Murphys can plausibly show Allstate lacked an arguable basis for its conclusion that it lacked "walls." That said, the case is still proceeding on other claims, and both parties presumably know what the Court does not. So, if the Murphys have a good-faith basis for claiming that the structure had actual walls—as that common term is typically understood—then they may seek one last opportunity fix their pleading by factually describing the structure or attaching a photograph. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (noting that courts should not dismiss for failure to meet pleading requirements "without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after repeated opportunities to do so"). They are give one week to do so.

B.     The Agent's Authority to Alter the Policy

The Murphys offer an alternative position, arguing that the agent had authority to alter the Policy terms. In their initial Complaint, they averred that the agent told them "the Policy provided coverage for the storage structure," but did not claim that he said it was covered for collapse. Compl. [1] ¶ 8. The Court held that this was not sufficient to show a statement that the structure was covered for all risks (among other shortcomings). *See* Order [28] at 7. The Murphys attempted to address that in their second amended complaint, stating that the agent "represented to Plaintiffs that the Policy provided full coverage for this building structure, including coverage in the event of a collapse." Second Am. Compl. [45-2] ¶ 8. They argue that the agent's representations were binding on Allstate because he had "apparent authority to alter coverage on the Plaintiff's policy" and that Allstate's acceptance of a higher premium indicated the representative had "actual authority to make additions to the coverage under the policy." Pls.' Reply [37] at 2.

To begin, there are no facts in the second amended complaint plausibly showing the agent had actual authority to alter the Policy. The Murphys rely on the fact that their premiums covered the structure, but they have not plausibly shown that the increase was related to collapse coverage as opposed to the other perils the Policy did cover under the "Other Structures Protection" that applied to this structure. Policy [5-1] at 32, 43. Additionally, there are no pleaded facts regarding the employee/agent's identity, relationship to Allstate, scope of authority, or conduct with respect to the completion of the application or issuance of the Policy. Finally, nothing in the Policy (or any other part of the Rule 12(b)(6) record) suggests that Allstate granted the employee/agent actual authority to unilaterally alter the express Policy terms through any pre-policy statements. The Policy itself states that it was signed with "legal authority" by the

Secretary and President and is "binding with the countersignature" of the authorized agent. *Id.* at 7. Thus, the Murphys have not pleaded facts from which the Court could plausibly find actual authority.

To establish apparent authority, the Murphys must show "(1) acts or conduct on the part of [Allstate] indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1181 (Miss. 1990) (citing *Ford v. Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987)). Allstate focuses on the reasonable-reliance element, and "under Mississippi law, a party's reliance on representations by an insurance agent that contradict the policy language is unreasonable." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 438 (5th Cir. 2007) (citing *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 464 (5th Cir. 2003)); *accord Hutton v. Am. Gen. Life & Acc. Ins. Co.*, 909 So. 2d 87, 95 (Miss. Ct. App. 2005).

*Mladineo v. Schmidt* offers a good example. 52 So. 3d 1154 (Miss. 2010). There, the insureds were told by the insurance agent that their home and other structures were covered for all wind and water damage "from any named storm" "through the 'hurricane policy.'" *Id.* at 1157. When the insureds received their policy, the "hurricane coverage" excluded damage caused by flooding, though the agent had not mentioned it. *Id.* About four months after the insureds received their policy, Hurricane Katrina hit the Mississippi Gulf Coast and the insureds' property flooded. *Id.* The trial court held that the insureds could not—as a matter of law— reasonably rely on the agent's pre-policy statement that conflicted with the policy language. *Id.* at 1159. The Mississippi Supreme Court affirmed, holding that "after receipt of the insurance policy, it was not reasonable for the Mladineos to rely on any oral representations by [the agent]

which contradicted the terms of that policy." *Id.* at 1167.  The same is true here, and the Murphys have failed to plausibly plead that Allstate lacked an arguable basis to deny coverage.[2]

IV.     Conclusion

For these reasons, the Motion for Leave to File an Amended Complaint [30] is moot; the Motion for Leave to File a Second Amended Complaint [45] is granted as to the inclusion of the word "wind" in paragraphs 11 and 41 but denied in all other respects.  As stated above, if the Murphys have a good-faith basis for claiming that the structure had actual walls then they may seek leave to amend within one week of this Order.

**SO ORDERED AND ADJUDGED** this the 27th day of January, 2023.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Murphys make other arguments that would not alter the result.  For example, they argue that Allstate's "virtual" underwriting triggers liability for extracontractual and punitive damages.  Pls.' Reply [37] at 6.  Yet Allstate denied coverage because it maintained that the structure lacked "walls and a roof," Denial Letter [1-1] at 1, and the Murphys fail to explain why Allstate could not virtually confirm that position.